IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FRANCIS C. TUCKER,

      Plaintiff,

v.                                    Civil Action No. 5:08CV105
                                             (STAMP)

UNITED STATES OF AMERICA,

      Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. Procedural History

Francis C. Tucker ("Francis Tucker") filed this civil action against defendant United States of America ("United States") under 28 U.S.C. § 7432(a)(1) which provides that a taxpayer may bring suit against the United States for a knowing or negligent violation of 26 U.S.C. § 6103. In this suit, plaintiff Francis Tucker alleges wrongful disclosure of his tax return information by an employee of the Internal Revenue Service ("IRS") during the course of a criminal investigation of Francis Tucker. During that investigation, IRS Special Agent Richard Brad Nickerson ("Agent Nickerson") and IRS Special Agent Ryan Korner ("Agent Korner") contacted numerous third parties. Francis Tucker asserted that during six of these third-party interviews Agent Nickerson wrongfully disclosed tax return information about the plaintiff.

Following the institution of this civil action, this Court granted a motion by the United States to stay proceedings pending the outcome of the criminal matters arising out of the IRS

investigation that formed the basis for this civil action. The United States subsequently indicated to this Court that the IRS discontinued the investigation of the plaintiff and this Court then lifted the stay.

Title 28, United States Code, Section 6103(a) provides, in general, that an officer or employee of the United States shall not "disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee . . ."

Title 26, United States Code, Section 7431 provides a civil remedy to taxpayers whose return information has been disclosed in violation of § 6103. That section provides:

> If any officer or employee of the United States knowingly or by reason of negligence, inspects or <u>discloses</u> any return or <u>return information</u> with respect to a taxpayer in violation of any provision of § 6103, such taxpayer may bring a civil action for damages against the United States in a district court in the United States.

(emphasis added).

Following discovery, the United States filed a motion for partial summary judgment contending that there is no genuine issue of material fact, and that Agent Nickerson did not disclose the plaintiff's return information to Cathy Mae West, Thomas West, Donetta LaRue and Gary Tucker or any of them. The motion for partial summary judgment involved statements taken by Agent Nickerson from those individuals. This Court denied summary judgment as to those statements but granted summary judgment as to

2

the statement taken from another witness, Gary Tucker. (ECF No. 74.) On April 26, 2011, this Court conducted a bench trial in this civil action.

Based upon this Court's review of the evidence and upon the resolution of factual disputes after giving due consideration to both the credibility of the witnesses and the various documents admitted as exhibits, this Court, pursuant to Federal Rule of Civil Procedure 52(a), hereby makes the following findings of fact and conclusions of law and finds that defendant United States is entitled to judgment and that, therefore, this civil action shall be dismissed.

## II. <u>Findings of Fact</u>

1.  Sometime in 2007, a federal grand jury investigation of Francis Tucker was initiated relating to Francis Tucker's federal income tax liabilities. This investigation dealt with whether or not Francis Tucker had evaded payment of income taxes during the years 2002 through 2007. The focus of the investigation centered on whether Francis Tucker might have been withdrawing money from his businesses, which included Ohio Valley Amusement Company and Mound City, Inc., and not reporting that money on his personal income tax returns. Also, the IRS was investigating whether Francis Tucker may have been paying personal expenses out of his businesses and not reporting those items on his personal income tax returns. In connection with this investigation, Agent Nickerson

and Agent Korner conducted an interview of plaintiff Francis Tucker as well as third-party interviews of other individuals.

2.    The parties in this civil action have stipulated to the following facts:

a.    On November 7, 2007, Francis Tucker, along with witnesses, Tom Tucker, Brad Singleton, Sergeant J.M. Andreas, was interviewed by IRS Special Agent Ryan Korner in Moundsville, West Virginia.

b.    On November 17, 2007, Cathy West was interviewed by IRS Special Agent Richard B. Nickerson and Ryan L. Korner in Glen Dale, West Virginia.

c.    On November 27, 2007, Francis Tucker was interviewed by IRS Special Agents Richard B. Nickerson and Ryan Korner in Moundsville, West Virginia.

d.    On December 12, 2007, Greg George was interviewed by IRS Special Agents Richard B. Nickerson and Ryan Korner in Wheeling, West Virginia.

e.    On December 12, 2007, Donetta Tucker[1] and Francis Tucker were interviewed by IRS Special Agents Richard B. Nickerson and Ryan Korner in Moundsville, West Virginia.

f.    On December 12, 2007, Tom Tucker was interviewed by IRS Special Agents Richard B. Nickerson and Ryan Korner in Moundsville, West Virginia.

g.    On February 19, 2008, Tom West was interviewed by IRS Special Agents Richard B. Nickerson and Ryan L. Korner in Moundsville, West Virginia.

h.    On May 30, 2008, Gary Tucker was interviewed by IRS Special Agents Richard B. Nickerson and Ryan L. Korner in Glen Dale, West Virginia.

i.    On August 5, 2008, Thomas Tucker was interviewed by IRS Special Agent Richard B. Nickerson in Wheeling, West Virginia.

_____

[1]Donetta Tucker is now the ex-wife of Francis Tucker and is referred to hereafter and in the trial as Donetta LaRue.

(ECF No. 73.)

3.    Agent Nickerson was the lead agent of the grand jury investigation of Francis Tucker.

4.    As part of the Francis Tucker grand jury investigation, Agent Nickerson gathered background information relating to Francis Tucker, analyzed Francis Tucker's filed tax returns, and then conducted interviews and subpoenaed bank records.

5.    Agent Nickerson deemed it necessary to interview Francis Tucker as well as certain members of his family, business associates and other persons related to Francis Tucker in order to complete the investigation, including for purposes of possible corroboration of information provided by Francis Tucker during his interviews.

6.    On November 7, 2007, Francis Tucker was interviewed for the first time by Special Agent Ryan L. Korner ("Agent Korner"), along with West Virginia State Trooper J.M. Andreas.    Agent Nickerson did not participate in the initial interview of Francis Tucker as he was conducting an interview in another case at that time.

7.    In addition to the first Francis Tucker interview, Agent Korner worked with Agent Nickerson in conducting a number of the third-party witness interviews relating to the Francis Tucker investigation.

8.  On November 27, 2007, Agents Nickerson and Korner conducted a second interview of Francis Tucker.

9.  Agents Nickerson and Korner, as noted above, conducted third-party interviews of Tommy Tucker, who is Francis Tucker's brother, Greg George, a close friend of Francis Tucker, Donetta LaRue, Francis Tucker's wife, Cathy West, Francis Tucker's former wife, and Thomas West, Francis Tucker's former brother-in-law.  It is these interviews that form the basis of plaintiff's complaint alleging wrongful disclosure of return information.  As noted above, Francis Tucker's son, Gary Tucker, was also interviewed and this interview was the basis of one claim in the plaintiff's complaint.  However, this Court granted summary judgment to the United States on that claim.

In addition to these interviews, Agent Nickerson conducted over twenty other interviews which do not form the basis for the plaintiff's complaint.

10.  Agents Nickerson and Korner testified both on direct examination and cross-examination in the plaintiff's case and on direct examination and cross-examination in the United States' case.

11.  Tommy Tucker, Cathy Mae West, Thomas J. West, Donetta LaRue, Gregory L. George and Francis C. Tucker testified for the plaintiff.

## Tommy Tucker

12. In the course of the interview of Tommy Tucker, the brother of Francis Tucker, Tommy Tucker testified that Agent Nickerson said that "Francis was going to jail for tax evasion." This statement was allegedly made during the second of three interviews. Both agents were present during that interview. At the time of the interview, Tommy Tucker was part of Ohio Valley Amusement and was at one time president and chief executive officer of that company. Tommy Tucker testified that after his brother Francis Tucker was fired as an officer and employee of Ohio Valley Amusement, Tommy Tucker remained at Ohio Valley Amusement and that this put a strain on his relationship with his brother, and that he felt guilty about this. However, he denied in his testimony that he was merely going along with his brother's story. Tommy Tucker testified that the two interviewing agents conducted themselves professionally, that they were not rude and that their tone was stern and serious. Tommy Tucker said that he had the impression that his brother was going to jail based, at least in part, on the questions that an agent asked him during the interview, but he also stated that the agent said that Francis Tucker was going to jail for tax evasion. Agent Nickerson denied that during his interview with Tommy Tucker he ever told Tommy Tucker that he was investigating Francis Tucker for tax evasion or that he ever made any similar statements. Agent Nickerson also testified that Agent

Korner never informed Tommy Tucker that they were investigating Francis Tucker for tax evasion nor did Agent Korner make any similar statements. Agent Nickerson also testified that he never informed Tommy Tucker that Francis Tucker was going to jail nor did he make any similar statements. Agent Nickerson also testified that Agent Korner never informed Tommy Tucker that Francis Tucker was going to jail nor did he make any similar statements. Agent Korner also testified that he did not state to Tommy Tucker that Francis Tucker was going to jail or that he made any similar statements. Agent Korner further testified that he believed Agent Nickerson never told Tommy Tucker that they were investigating Francis Tucker for tax evasion nor did Agent Nickerson make any similar statements or did he believe that Agent Nickerson ever told Tommy Tucker that Francis Tucker was going to jail or any similar statements. The two agents testified that there was no reason to use any aggressive interview techniques during this short interview such as informing Tommy Tucker that Francis Tucker was going to jail or that he was being investigated for tax evasion since Tommy Tucker was cooperative with these agents and was neither rude nor combative. Agent Korner stated that while not specifically recalling what was said between Agent Nickerson and Tommy Tucker, he believed that if such alleged statements were made, he would have recalled them and that if Agent Nickerson had made the purported statements, Agent Korner would have told Agent Nickerson

that the statements were inappropriate and that had such questioning continued, then Agent Korner would have spoken with Agent Nickerson's supervisor. Both Agent Nickerson and Agent Korner had received training on investigative techniques and criminal tax investigations including training relating to 26 U.S.C. § 6103 and that training included the type of information that an IRS agent may or may not disclose to third parties. Agent Nickerson testified that any statement regarding the fact that Francis Tucker was going to jail would have been factually inaccurate because the interview was being conducted at the beginning of the investigation when the agents were still trying to collect evidence and when the outcome of the investigation was not known at that time.

13. Similarly, Agent Korner, based on his training and experience, stated that he understood that telling a witness that Francis Tucker was the subject of a criminal investigation or that Francis Tucker was going to jail was not appropriate and that agents do not make the determination about whether a subject of an investigation goes to jail. The agent's job is to gather evidence and facts and present them to the United States Attorney's Office and the agent's supervisor. Further, to the extent that Agent Korner understood the statements to be an unauthorized disclosure, Agent Korner was aware of the Internal Revenue Service employee's

obligation to report a co-worker who makes any unauthorized disclosure.

In general, Agent Korner testified that it was not necessary to disclose such information to any third-party witnesses, specifically that Francis Tucker was under investigation for tax evasion. Such disclosure would not be helpful in the interview because "If anything, it would probably cause the third-party witness to shut down or clam up."

<u>Cathy West</u>

14. Agents Nickerson and Korner interviewed Cathy West, a former wife of Francis Tucker, at her home.

Cathy West was not married to Francis Tucker at the time of her interview which took place in 2007.

Cathy West testified that the agents asked her a lot of questions about finances and that she explained to them that she did not really know anything about the "business end of his finances."

Ms. West said that the agents asked her about income taxes and the filing of their returns and whether Francis Tucker had hidden any money or made money that she did not know about. She was also asked questions about Francis Tucker's purchases and whether he went on trips. She testified that the agents then told her that ". . . if they were able to prove these things, that he would go to

jail for it because they felt that he wasn't paying enough income tax."

Ms. West acknowledged that the agents were polite to her and that she was cooperative with the agents during the interview which lasted about thirty minutes. Ms. West was also asked questions about paychecks she was receiving from Ohio Valley Amusement. Despite Ms. West's testimony on direct examination, cited above, on cross-examination, she said that while she "firmly believed" that the agents wanted to put Francis Tucker in jail, she could not "say exactly what they said" and that she "cannot remember what their exact words were."

15. Agent Korner, who was present during the West interview, testified that he did not recall Agent Nickerson making any statements regarding Francis Tucker and "jail." Again, Agent Korner testified that if those statements were made, he would recall them and if such statements were made by Agent Nickerson, he would have an obligation to report that disclosure to his supervisor. Agent Korner believed that, based on his experience, an IRS employee is under an obligation to report a co-worker who makes an unauthorized disclosure. Agent Korner testified that it would not be accurate to say to a third-party witness that Francis Tucker was going to jail as the agents do not make a determination "of who goes to jail." He testified that the agent's responsibility is to gather evidence, to gather facts and to

present them to the United States Attorney's Office, and that the
agents "have no say in whether or not the individual goes to jail
directly." Agent Korner did not believe that such a statement
would be at all helpful in gaining the cooperation of any witness.

Thomas J. West

16. In early 2008, Agents Nickerson and Korner interviewed
Thomas West, who is Francis Tucker's former brother-in-law. The
interview was conducted at a restaurant and lasted about ten to
fifteen minutes. Mr. West testified that he was cooperative with
the two agents who interviewed him and that the agents were polite.
The interview of Mr. West occurred because research had indicated
that Mr. West appeared to be a part owner of a business called The
Koffee Shop and that a transaction had occurred in which at least
part ownership of The Koffee Shop was transferred to Donetta LaRue,
who was Francis Tucker's wife in 2007. The agents wanted to
determine how Ms. LaRue acquired a part ownership in that property,
whether any money had changed hands and whether Francis Tucker
controlled the business. Mr. West testified that in the past, he
had loaned money to Francis Tucker. In response to a question
about whether the agents had referenced the word "prison" or
"jail," Thomas West responded: "Maybe jail one time or so, but --."
On cross- examination, Mr. West said that he could not specifically
recall that the agents definitely told him that Francis Tucker was
going to jail indicating that he could not answer "yes or no" on

12

that question because: "I really don't remember that far back." Consequently, Mr. West testified that as of the date of the trial, he could not state whether or not the agents informed him that Francis Tucker was going to jail.

17. Again, as with the other interview witnesses, Agent Nickerson testified that, based on his training and experience, it would not have been acceptable for either he or Agent Korner to tell Mr. West that Francis Tucker was going to jail and that such a statement would not be factually accurate because the interview was being conducted at the very beginning of the investigation when the agents were still trying to collect evidence. Consequently, Agent Nickerson felt that the agents had no idea what would be the outcome of the investigation. Further, Agent Nickerson testified that making such a statement would not have been an effective interview technique because making such a statement would not be helpful in obtaining information from the witness.

18. Similarly, Agent Korner testified that telling a witness that an individual is going to jail would not be helpful in gaining the cooperation of a witness. Also, Agent Korner testified that with respect to Thomas West's interview, an IRS employee is under an obligation to report a co-worker who makes an unauthorized disclosure and that he would have this obligation. Agent Korner said that if Agent Nickerson had made such a statement, Agent Korner would have remembered it. Also, as stated regarding other

witnesses, if such a statement was made, there would be an obligation to report a co-worker who made an unauthorized disclosure and that the person making such disclosure would be disciplined or terminated for failing to report an unauthorized disclosure.

<u>Donetta LaRue</u>

19. In December 2007, Agents Nickerson and Korner interviewed Ms. LaRue at her home in Moundsville, West Virginia. In the interview, which lasted about thirty minutes, Ms. LaRue testified that: "They said -- they said something to the effect, he is probably looking at serving some time or he is -- they didn't -- I don't think they used the word jail, but they said he is looking at serving some time."

20. Donetta LaRue is a former wife of Francis Tucker although she was married to Francis Tucker at the time of the interview. Ms. LaRue was unable to exactly recall what the agents said to her and could not recall if they ever used the word "jail" and that it was her "impression" based on the questions the agents were asking as well as the fact that she testified the agents indicated they were conducting a grand jury investigation of Francis Tucker. The agents were polite to Ms. LaRue.

21. As with other witnesses, the agents indicated that they had no reason to use any aggressive interview techniques, in this case advising Donetta LaRue that Francis Tucker was going to jail

or words to that effect.  Ms. LaRue was cooperative and responsive to their questions.   Again, as with respect to other witnesses, Agent Nickerson testified that based upon his training and experience, he specifically denied informing Ms. LaRue that Francis Tucker was probably going to jail and denied that he made any similar statements.   Agent Nickerson also testified that Agent Korner did not tell Ms. LaRue that Francis Tucker was probably going to jail or make any similar statements.   Agent Nickerson further said that such statements would not have been factually accurate because they were at the beginning of the investigation and had no idea what the outcome of the investigation would be.

22.   Similarly, Agent Korner, who was present at the LaRue interview as a secondary agent, testified that he never told Ms. LaRue that Francis Tucker was going to jail or anything similar to that and that he does not believe that Agent Nickerson made any such statement or statements.   As with other witnesses, Agent Korner was aware of an IRS employee's obligation to report a co-worker who makes an unauthorized disclosure and that such unauthorized disclosure would be subject to discipline or termination of the employee.

<u>Gregory L. George</u>

23.   Also in December 2007, Agents Nickerson and Korner interviewed Gregory George ("Greg George"), who is Francis Tucker's close friend, at the G&G Bar and Grill in Wheeling, West Virginia.

Again, Greg George, as with other witnesses, was cooperative and answered the questions.

24. Agents Nickerson and Korner conducted this interview. The interview concerned a large withdrawal from a bank ATM account, a loan Greg George made to Francis Tucker. These questions were deemed important to the agent's investigation because one of the IRS's theories was that Francis Tucker was withdrawing money from his businesses, using it to pay personal expenses and not reporting it as income on his individual tax returns. This loan was in the amount of $100,000.00. Agent Nickerson, as a result of this interview and a follow up investigation, was of the opinion that Greg George's responses to the interview questions were not truthful.

25. Greg George testified that he was respectful to the agents and that they were also respectful to him. The agents acted professionally during the interview. Greg George indicated that at the start of the interview, he asked the agents what this meeting concerned and that the agents said "We are here to talk about putting Mr. Tucker in jail."

26. Greg George had known Francis Tucker for about twenty years and considered Francis Tucker a "good friend."

27. Agent Nickerson testified that neither he nor Agent Korner advised Greg George that Francis Tucker was going to jail

and that Agent Korner did not make this statement or any similar statement.

28.   Again, as with other persons interviewed, Agent Nickerson testified that any statement regarding going to jail would have been factually inaccurate because it was the beginning of the investigation and the agents were still trying to collect evidence and did not know what the outcome of the investigation would be. Further, the agents did not need to use any aggressive interview techniques such as informing Greg George at the very beginning of the interview that the agents were there to talk about putting Francis Tucker in jail.

29.   Agent Korner was present during the interview of Greg George and he also testified that he did not disclose to Greg George that Francis Tucker was going to jail or made any similar statements, nor did he believe that Agent Nickerson said that Francis Tucker was going to jail or made any similar statements. As with regard to testimony concerning other witnesses, if Agent Nickerson had made a statement as alleged by Greg George, Agent Korner testified he would have informed Agent Nickerson that the statement was inappropriate and that if this line of questioning had continued, then Agent Korner would have spoken to a supervisor.

<u>Francis C. Tucker</u>

30.   Francis C. Tucker resides in Moundsville, West Virginia and at one time was involved in the video lottery machine business.

Francis Tucker started the business in 1980. His brother, Tom Tucker, joined him in the business in 1987. The business was operated under the name of Ohio Valley Amusement Company. Francis Tucker was the president of Ohio Valley Amusement Company.

31. Francis Tucker testified that he met with individuals from the IRS on three to four occasions. Francis Tucker answered all the questions posed by the IRS agents.

32. Francis Tucker believed that he was cooperative during the investigation.

33. Francis Tucker stated that the IRS never said to him that he was going to be "locked up or incarcerated." (Tr. 150.) Before Francis Tucker and Donetta LaRue were married, the issue of the IRS investigation was discussed between the two of them. Francis Tucker does not object to the fact that an IRS investigation took place but rather the manner in which it was conducted. He believes that his relationship with Ms. LaRue and the divorce was because of the way the IRS investigation was conducted. Also, by way of asserted damages, Francis Tucker states that he has trouble sleeping at night.

Any finding made by this Court which is not a finding of fact shall be deemed a conclusion of law.

### Untimely Allegations Raised at Trial

During the bench trial, plaintiff attempted to submit evidence relating to certain issues, that is the IRS agents' introduction of

themselves to certain third-party witnesses which plaintiff asserted was in violation of 26 U.S.C. § 6103, namely that persons interviewed were told by the agents by way of introduction that Francis Tucker was under a grand jury investigation. The defendant objected to this testimony as being untimely. This Court decided to hear this testimony and then decide at a later date whether it should be considered as evidence in this civil action. This Court now finds that this evidence is untimely as those claims were never made in the complaint and the plaintiff never sought to amend his complaint to include these allegations. Morever, the plaintiff never supplemented any responses to discovery requests by the defendant to include this information and these matters were never addressed at the pretrial conference or in the joint pretrial order.

Accordingly, this evidence must be deemed untimely and will not be considered or admitted as evidence in this case.

## Exhibits Not Admitted at Trial

At the conclusion of the trial, counsel for the plaintiff indicated that he had no objection to the admission of all of the defendant's exhibits and these were admitted. This Court also admitted certain of plaintiff's exhibits to which there were no objections. The defendant, however, objected to plaintiff's Exhibit Nos. 4, 11 through 16, 18, 20 through 26 and 30 through 33. This Court reserved ruling on these exhibits until they could be

considered post-trial and in connection with proposed findings of fact and conclusions of law submitted by the parties. This Court invited the parties to submit memoranda on those exhibits of plaintiff objected to by the defendant. Defendant filed its written objections to plaintiff's exhibits (ECF No. 85.) and plaintiff filed a response to defendant's objections (ECF No 98.).

The defendant objects to plaintiff's Exhibit No. 4 which is Section 9.5.1 of the Internal Revenue Manual and deals with criminal administrative investigations. Since this civil action deals with a grand jury investigation, it is not a criminal administrative investigation and should not be considered as such. Therefore, the exhibit is not relevant and not admissible. The plaintiff does not appear to address this objection in his response. Plaintiff's Exhibit No. 4 is not admitted.

The defendant objects to plaintiff's Exhibit Nos. 11 through 16, 18, 20 through 26 and 30 through 33 on the grounds that they are not relevant in that they deal with the issue raised at trial, the manner in which the IRS agents introduced themselves, which the defendant contended should not be included. The plaintiff responds that these exhibits are relevant since the Court should include the testimony offered concerning the IRS agents' introduction. Because this Court has ruled above that such evidence is untimely, it has been excluded by the Court. This Court, in turn, finds that these

exhibits are not admissible as they are not relevant under Federal
Rule of Evidence 402.

### III.   Conclusions of Law

1.   In determining the credibility of the witnesses who
testified at the non-jury trial, this Court has been guided by a
number of factors, including the manner in which a witness
testified, any bias that the witness may have, the character of the
testimony given, and any evidence contrary to the testimony of the
witness.

2.   Based upon this Court's review of all of the evidence
admitted and considered at the trial and after giving consideration
to the credibility of the witnesses and those documents admitted
into evidence, this Court finds that plaintiff Francis Tucker has
failed to prove by a preponderance of the evidence that either
Special Agent Nickerson or Special Agent Korner made any statements
during the interviews to the third-party witnesses that Francis
Trucker was going to jail, that Francis Tucker was being
investigated for income tax evasion or that these IRS Agents made
any similar statements.

3.   Plaintiff Francis Tucker, therefore, has failed to prove
by a preponderance that IRS Special Agents Nickerson and Korner as
employees of the defendant United States disclosed any return or
return information obtained by them in any manner in violation of
28 U.S.C. § 6103 and that, therefore, plaintiff Francis Tucker is

not entitled to recover from defendant United States under 28 U.S.C. § 7431(a)(1).

4. Any conclusion of law by this Court which is not a conclusion of law shall be deemed a finding of fact.

5. This Court finds in favor of the defendant United States of America.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    March 29, 2012

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE